FILED

2016 Mar-22  PM 01:48
U.S. DISTRICT COURT
N.D. OF ALABAMA

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | |
|---|---|
| **DARRYL WALKER, et al.,** } | |
| } | |
| **Plaintiffs,** } | |
| } | |
| **v.** } | **Case No.:  2:13-CV-524-RDP** |
| } | |
| **JEFFERSON COUNTY BOARD OF** } | |
| **EDUCATION, et al.,** } | |
| } | |
| **Defendants.** } | |

**<u>MEMORANDUM OPINION</u>**

This case is before the court on Plaintiffs Amended Renewed Motion for Conditional Class Certification and Issuance of Court Supervised Notice to All Others Similarly Situated to "Opt In" Pursuant to Rule 216(b) of the Fair Labor Standards Act.  (Doc. # 40).

**I.     Introduction**

Plaintiffs are a group of ten (10) so-called 240-day employees either currently or formerly employed by the Jefferson County Board of Education ("the Board").  For purposes of this motion, their claims can be divided into two categories.  First, they have sued the Board alleging that the Board's previous practice of dividing their annual salaries by 260 days to obtain their hourly and overtime rates violated the Fair Labor Standards Act ("FLSA").  29 U.S.C. § 201, *et. seq*.  As explained below, the court refers to this allegation as Plaintiffs' Common Claim.  Second, Plaintiffs have also alleged a garden variety of other FLSA violations.  The court refers to those allegations as Plaintiffs' Individual Claims.

**II.     Procedural History**

In 2009, before this case was filed, a group of Jefferson County Board of Education employees filed suit in this court.  *Reno, et al. v. Jefferson County Bd. of Educ.*, No. 2:09-cv-01900-RDP (the "*Reno* Litigation").   In the *Reno* Litigation, those employees challenged the same pay practice condemned by the parties here.   In particular, the *Reno* plaintiffs claimed Defendants violated the FLSA because, although they were hired on the basis of a 240-day work year, their pay rates were calculated on the basis of a 260-day annual salary.   The *Reno* Litigation was mediated and settled.   As part of the settlement, which this court approved, the Board agreed to calculate the hourly pay and overtime rates of 240 day employees using a 240 day (rather than 260 day) annual salary.   Based upon that settlement, the court dismissed the *Reno* Litigation on September 1, 2010.

Following the *Reno* case, in September 2010 the Board approved a change from the 260-day formula (the formula complained of here) to a daily rate formula based on 240 days for purposes of calculating overtime rates.   This change *increased* the overtime rate for all affected employees (including Plaintiffs in this action).   (Doc. # 41-1, Hammonds Aff. pp. 4-7, Exhs. E-L).  Thereafter, in 2010 the Board issued checks for back wages to all affected employees (including each of the Plaintiffs here). (*Id.*). Every employee receiving a check negotiated it (including Plaintiffs hereto), and letters were sent with those checks explaining the change and the reasons for the change.  (*Id.*).

After dismissal of the *Reno* Litigation, on October 8, 2010, Daryl Walker and twenty-nine (29) other then-current and former Board employees sued alleging FLSA violations.   That case was styled *Darryl Walker, et al. v. Jefferson County Board of Education* and bore civil action number 2:10-cv-2713-JEO.   It is referred to in this opinion as the "2010 Case."   In the

2010 Case, Plaintiffs again sought back wages based on the previous 260 day method of determining their hourly pay and overtime rates. And the Board again disputed the merits of that claim. The Board continues to assert that its 260 day method of calculation was correct; however, in September 2010, the Board changed its calculation method to that proposed by Plaintiffs here (and by the *Reno* plaintiffs) – *i.e.*, utilizing a 240-day divisor instead of a weekly or 260-day divisor. (*See* Doc. # 41-1, Hammonds Aff. pp. 4-7, Exhs. E-L).[1]

On March 18, 2013, after two and a half years of litigation, the 2010 Case was dismissed without prejudice at Plaintiffs' request. That request came after the court denied their request to amend the pleadings to add school board members in their official capacities. Before that dismissal, the parties had conducted extensive discovery on all claims asserted in the 2010 Case, and motions to dismiss and/or for summary judgment were filed, fully briefed, and under submission. Although the 2010 Case was initiated by thirty (30) plaintiffs, by the time of its dismissal, only fifteen (15) plaintiffs remained in that case. The other fifteen (15) original plaintiffs had either voluntarily dismissed their claims during the course of that litigation[2] or their claims had been dismissed due to a failure to comply with a court order concerning a discovery deadline.

This action was filed on the day after the dismissal of the 2010 Case—on March 19, 2013. Plaintiffs in this case number ten. Each one of them was a party to the 2010 Case. The factual allegations and claims asserted in the Complaint in this case are substantively identical to

---

[1] The affidavits that were filed in the 2010 Case have been refiled in this case. (Docs. # 41-1, Affidavit of Dr. Phil Hammonds, 41-2 Affidavit of Yancy Morris, and 41-3 Affidavit of Eddie Brown). Each contains Rule 56 evidence pertinent to the subject Motion.

[2] *See* 2010 Case, 2:10-cv-2713-JEO, Order of September 28, 2011 (Doc. # 27), Order of November 14, 2011 (Doc. # 35).

those that were asserted in the amended complaint in the 2010 Case.[3]   In their Complaint, Plaintiffs assert claims on their own behalf, and seek to represent other Board employees who opt in and consent to representation.  (Doc. # 1 at 1).[4]

Plaintiffs have described the putative class in various ways.  In their Complaint, they reference it as a group of "non-exempt employees of the Defendants in various job categories." (Doc. # 1,¶ 33). They have also stated that the group includes "[t]welve month employees who worked as certified technicians and mechanics, support specialists, utility workers, secretaries, electricians, accountants, custodians [for the Board.]" (*Id.*, ¶ 21).  In their Motion, they describe the potential class as those employed "with the Board in various non[-]exempt and non-certified positions, including but not limited to custodians, paraprofessionals, secretaries, bookkeepers, maintenance, Ketona facility workers and drivers."  (Doc. # 40, ¶ 3).

As noted above, Plaintiffs' FLSA claims fall into two categories. They allege that they (1) were not fully paid overtime because the Board miscalculated those payments by using a formula based on a weekly salary instead of a "daily rate of pay" (the "Common Claim"), and (2) worked time for which they were not paid at all or were not paid an appropriate overtime rate (the "Individual Claims").

In their Complaint, Plaintiffs articulated their "Common Claim" as follows:

21.  Defendant Jefferson County Board of Education did not properly calculate the daily rate of the plaintiffs for FLSA purposes.  Twelve month employees who worked as certified technicians and mechanics, support specialists, utility workers, secretaries, electricians, accountants, and custodians for Defendant daily rate of pay was calculated by dividing their individual annual salary by 260 days

---

[3] In fact, other than the addition of the aforementioned official capacity claims and the deletion of specific individual claims filed on behalf of the five Plaintiffs in the 2010 case who were not included in the Complaint, the text of the Complaint appears identical to that found in the Amended Complaint filed in the 2010 case.

[4] 29 U.S.C. § 216(b) of the FLSA authorizes collective actions in a proper case.

instead of 240 days.  This resulted in an incorrect and lower hourly rate of overtime rate.

(Doc. # 1, ¶ 21).[5]  Plaintiffs make additional allegations about their respective Individual Claims in ¶¶ 23-32 of the Complaint.  (*Id.*, ¶¶ 23-32).  In those allegations, they assert they were not paid for certain work performed.  After addressing the proper standard of review, the court discusses Plaintiffs' Common Claim and Individual Claims, in turn.

## III.   Legal Standard Applicable to Motion

The FLSA authorizes the filing of collective actions when the following conditions are met:

> An action ... may be maintained against any employer ... by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

29 U.S.C. § 216(b).  The purpose of such a collective action is "to avoid multiple lawsuits where numerous employees have allegedly been harmed by a claimed violation or violations of the FLSA by a particular employer."  *Prickett v. Dekalb County*, 349 F.3d 1294, 1297 (11th Cir. 2003).  A district court has the discretion to conditionally certify a collective action if doing so would permit the "efficient resolution in one proceeding of common issues of law and fact arising from the same alleged ... activity." *Hoffman‒La Roche, Inc. v. Sperling*, 493 U.S. 165, 169-70 (1989).  Our Circuit has made clear that before exercising that discretion and "facilitating notice, a district court should satisfy itself that there are other employees who desire to 'opt-in' and who are 'similarly situated' with respect to their job requirements and with regard to their pay provisions." *Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1259 (11th Cir. 2008);

---

[5] These allegations are identical to those asserted in the 2010 Case.  (See ¶ 40 of Amended Complaint in 2010 Case).

see also *Dybach v. State of Fla. Dep't of Corrs.*, 942 F.2d 1562, 1567-68 (11th Cir.1991) ("there must be other employees of the [defendant-] employer who desire to 'opt-in' and are 'similarly situated").

"A plaintiff has the burden of showing a 'reasonable basis' for his claim that there are other similarly[-]situated employees." *Morgan*, 551 F.3d at 1260 (citations omitted). Thus, "[t]he burden is on the plaintiffs to make an evidentiary showing that they and the proposed class are similarly situated, not on the defendants to disprove such similarity." *Saxton v. Title Max of Alabama, Inc*., 431 F.Supp.2d 1185, 1188 (N.D. Ala. 2006) (citing *Reed v. Mobile County Sch. Sys.*, 246 F.Supp.2d 1227, 1232 (S.D. Ala. 2003). Further, a plaintiff "must make some rudimentary showing of commonality between the basis for his claims and that of the potential claims of the proposed class, beyond the mere facts of job duties and pay provisions...." *Marsh v. Butler Cnty. Sch. Sys.*, 242 F.Supp.2d 1086, 1093 (M.D. Ala. 2003); *Thedford v. Drive In of Evansville, Inc.*, 2014 WL 5520954 (N.D. Ala. 2014).

When a court undertakes the so-called similarly-situated inquiry, common job titles and descriptions between Plaintiffs and the putative class members "alone cannot be the basis for conditional certification." See *Pickering v. Lorillard Tobacco Co.*, 2012 WL 314691 at *12 (M.D. Ala. 2012). Rather, a court must look to the nature of each employee's job duties, and the degree to which evidence regarding the plaintiff's job duties can be applied to all other employees. *Id.*; *see also, Holt v. Rite Aid Corp.*, 333 F.Supp.2d 1265, 1272 (M.D. Ala. 2004) ("The 'similarly situated' inquiry in this case must be analyzed in terms of the nature of the job duties performed by each putative plaintiff."); *Prince v. Cato Corp*., 2015 WL 1040713 at *9−10 (N.D. Ala. 2015).

In *Hipp v. Liberty National Life Insurance Co.*, the Eleventh Circuit "suggest[ed]" a "two-tiered approach to certification of § 216(b) opt-in classes" to assist district courts in resolving the similarly situated inquiry. 252 F.3d 1208 (11th Cir. 2001).

> The first determination is made at the so-called "notice stage." At the notice stage, the district court makes a decision-usually based only on the pleadings and any affidavits which have been submitted-whether notice of the action should be given to potential class members.
>
> Because the court has minimal evidence, this determination is made using a fairly lenient standard, and typically results in "conditional certification" of a representative class. If the district court "conditionally certifies" the class, putative class members are given notice and the opportunity to "opt-in." The action proceeds as a representative action throughout discovery.
>
> The second determination is typically precipitated by a motion for "decertification" by the defendant usually filed after discovery is largely complete and the matter is ready for trial ....

*Hipp*, 252 F.3d at 1218.

But this is not the usual case.  Ordinarily, at the notice stage the parties have not yet conducted extensive discovery directed at the factual issues and FLSA claims. Here, the parties have done so – both in this litigation and the 2010 Case. Obviously, this litigation has progressed well beyond the point that courts usually entertain an early motion for notice.  "The rationale [for a more lenient standard of analysis that may apply at the preliminary stage of  a case like *Hipp*[6]] disappears ... once plaintiffs have had an *opportunity* to conduct discovery with respect to defendant's policies and procedures." *Davis v. Charoen Pokphand (USA), Inc.*, 303 F.Supp.2d 1272, 1276 (M.D. Ala. 2004) (citing *White v. Osmose, Inc.*, 204 F.Supp.2d 1309, 1313 n. 2 (M.D. Ala. 2002); *Brooks v. BellSouth Telecomms., Inc.*, 164 F.R.D. 561, 566 (N.D. Ala.1995)) (emphasis added). When, as here, an FLSA case is in an advanced posture that is "different . . .

---

[6] Plaintiffs referenced the authority of *Hipp* in their Motion.  However, as is discussed herein, the more lenient standard discussed there is inapplicable here.

7

than that envisioned in *Hipp* as the first stage, or 'notice stage,' . . . a more searching standard of review is appropriate." *Davis*, 303 F.Supp.2d at 1276, and a plaintiff "will not be permitted to rely on the allegations in [the] Complaint. Rather, [a plaintiff] must rely on the evidence, and all the evidence will be considered, not just [plaintiffs' evidence]." See *Pickering*, 2012 WL 314691 at *9. Moreover, at this advanced stage of a case, a court must more seriously consider its "responsibility to avoid the 'stirring up' of litigation through unwarranted solicitation." *Brooks*, 164 F.R.D. at 567; *Thedford*, 2014 WL 5520954 at *12.

Finally, "the mere fact that [FLSA] violations occurred cannot be enough to establish similarity, as that would not ultimately be sufficient to establish a pattern and practice without a showing that the violations were more than sporadic occurrences." *Marsh*, 242 F.Supp.2d 1086, 1094 (M.D. Ala. 2003); *Hilley v. Tacala, L.L.C.*, 2014 WL 1246364 at *15-16 (N.D. Ala. 2014). Rather, a plaintiff must demonstrate a "pattern" of FLSA violations that "stem from [defendant's] formal or informal policy." *Id.*; *see also Morgan*, 551 F.3d at 1264. Where no wide-spread or across-the-board FLSA violations can be pointed to, an "individualized analysis of the specific minimum wage and overtime compensation violations [would be necessitated for] each and every member of the proposed collective action" (*see Hilley* at 15−16; *see Ledbetter v. Pruitt Corp.*, 2007 WL 496451 at *5 (M.D. Ga. Feb. 2007)), and "such an individualized analysis runs directly counter to 'the economy of scale' envisioned by collective treatment of similarly situated employees under § 216(b) of the FLSA." *Id.* (citing *Horne v. United Servs. Auto Ass'n*, 279 F.Supp.2d 1231, 1237 (M.D. Ala. 2003)).

IV.    **Analysis**

As noted above, Plaintiffs' FLSA claims fall into two categories: (1) the so-called Common Claim; and (2) their respective Individual Claims. The court addresses each category of claims in turn.

A.    ***The Common Claim***

Plaintiffs' Common Claim relates to their allegation that the Board miscalculated the overtime rate for Plaintiffs and other noncertified Board employees who were hired on a 240-day basis. In particular, they complain they were short-changed as to their hourly pay and overtime rates when the Board divided their individual annual salary by 260 days instead of 240 days. (Doc. # 1, ¶ 21). This same claim was advanced in the *Reno* Litigation (brought in this court in 2009) by other Board employees, all of whom were previously represented by Plaintiffs' counsel in this case. The Board disputed Plaintiffs' Common Claim in the *Reno* Litigation.

In their Motion, Plaintiffs request that this court conditionally certify a class of the Board's non-exempt, 240-day employees to provide them an opportunity to opt-in and collectively assert the Common Claim. However, Defendants note that by September 2010, the Board had corrected any alleged FLSA violations related to that Common Claim.[7] They changed the policy and paid those employees affected the difference between the pay rates. (Doc. # 41-1). Thus, they argue that the "Common Claim" made by Plaintiffs is also time barred because the Board remedied that alleged FLSA violation more than two years before the filing of the Complaint (on March 19, 2013).

---

[7] For example, Plaintiff Jimmy Williams has attested that his "overtime rate increased by $3.10 per hour after the Board corrected its miscalculation of my overtime pay in or about September 2010." (Doc. # 40-2, ¶ 7, Williams Declaration).

To join an FLSA collective action, an employee must consent, or "opt in," by filing with the court a written consent. 29 U.S.C. § 216(b) "[O]pt-in plaintiffs are deemed to commence their civil action only when they file their written consent to opt into the class action." *Grayson v. K Mart Corp.*, 79 F.3d 1086, 1106 (11th Cir. 1996); 29 U.S.C. § 256. The ordinary statute of limitations in cases brought under the FLSA is two years. 29 U.S.C. § 255(a). The FLSA provides for a three-year statute of limitations for causes of action arising from a willful violation. 29 U.S.C. § 255(b).[8]

There is little question that as of September 2012 (three and a half years ago), the statute had run on any FLSA claim that was not then filed. Similarly, even if Plaintiffs alleged that the so-called Common Claim FLSA violation could be deemed "willful" (and, to be sure, they have not), and the three year statute of limitations applied, those claims became untimely as of 2013. It follows inexorably that there are no current or former employees of the Board who could opt in to this action at this (or any future) point and assert a viable Common Claim that is not time-barred, under either the two or three year statute of limitations that may apply in an FLSA case. Accordingly, because any attempt to opt in based on the Common Claim will be untimely, Plaintiff's Motion is due to be denied as to the Common Claims.

Of course there are other reasons to deny Plaintiffs' motion to certify the Common Claim for opt in treatment here. Those are addressed below.

### 1.    Plaintiffs Have Not Satisfied the Opt-In Interest-In-Litigation Requirement.

To prevail on their Motion, Plaintiffs must demonstrate that other employees have an opt-in interest in this litigation. *Pickering*, 2012 WL 314691 at *12. (citation omitted).

---

[8] Plaintiffs cannot avail themselves of the extended statute of limitations for willful violations because they have not alleged any willful violations of the FLSA in the Complaint. (Doc. # 1).

"[U]nsupported expectations that additional plaintiffs will subsequently come forward" are insufficient. *Mackenzie v. Kindred Hosps. East, L.L.C.*, 276 F.Supp.2d 1211, 1220 (M.D. Fla. 2003).

When Plaintiffs filed the Motion, they also filed Consent forms signed by two persons: (1) Kelvin Kimble, former Board employee at Minor High School from October 1996 – July 29, 2013.  Kimble held the position of a nine month, eight hour custodian during the course of his employment; and (2) Tammra Harris, former Board employee at Chalkville Elementary School from 2007-2011.  Harris held the position of a six hour (30 hours per week) Child Nutrition Program worker during the course of her employment.  (*See* Docs. # 40-4, 40-5).

Over the five and one-half (5½) year course of this litigation (spanning from the filing to the 2010 case to present), only Kimble and Harris[9] have filed a consent opt-in form to join these actions.  No potential plaintiffs have indicated the same interest.  Plaintiffs' failure to show that there are others who want to opt in is fatal to their Motion.  See *Pickering*, 2012 WL 314691 at *12 (holding only one opt-in plaintiff during one and a half years of litigation was insufficient to meet the interest-in-litigation requirement).

Finally, it is highly doubtful that expending the resources associated with class certification and notice would produce any judicial economies.  There is nothing that suggests any appreciable number of opt-in claimants may be added.  Other employees who might join this action must have been the victims of an FLSA violation similar to those asserted by Plaintiffs.  Moreover, as noted above, the statute of limitations for opt-in claimants runs from the time the Consent is signed and filed with the court.  See *Grayson v. K Mart Corp.*, 79 F.3d 1086, 1106 (11th Cir. 1996).  The pay practice that is the subject of the Common Claim was changed in

---

[9] Of course, any claim by Harris -- who was last employed by the Board in 2011 -- is time barred and cannot be considered.

2010.  Thus, even if there were potential FLSA class members in this case, they would have to show their rights were similarly violated within two years of the filing of their consents.

In fact, over the span of this action and the 2010 Case, the number of persons pursuing claims has dropped precipitously.  Twenty employees who initially filed as plaintiffs effectively "opted-out" by dismissing or failing to prosecute their claims.[10]  None of the persons who dismissed their claims during that time did so because of a settlement; rather, by all indications, they decided not to pursue their claims for other reasons.  During the long course of this litigation that saw the exodus of twenty co-plaintiffs from the suits, Plaintiffs have managed to recruit only two other persons -- Kimble and Harris -- to join their cause[11] and both of those employees are no longer employed by the Board, having left in July 2013 and October 2011, respectively.

Moreover, as already noted during the life of this litigation, the Board has changed its means for reporting, administering, and paying overtime compensation.  (See Exh. D, Jones Aff. p. 2).  Before October 2012, employees used paper time sheets to report time to the Board, and most of Plaintiffs' Individual Claims involve complaints made in some form or fashion about those time sheets.  In 2012, the Board adopted a comprehensive, real-time, electronic time keeping system.  That system entails wholly different processes, from employee input, to corrections, to payments.  Thus, the Individual Claims that Plaintiffs have identified are not based on a pay system similar to that in place before October 2012.  (See Ex. D, Jones Aff. p. 2, Exhs. A-B.).  For all these reasons, Plaintiffs have not shown the existence of other similarly situated employees who desire to opt-in.

---

[10] At the inception of the 2010 case, there were thirty plaintiffs.  Today, only ten plaintiffs remain in this action.

[11] Kimble and Harris filed their Consents with the Motion.

Although there appears to be little binding precedent providing guidance as to the issue of numerosity related to a conditional FLSA opt-in certification, other district courts have declined to certify classes when there appear to be few potential plaintiffs. *See, e.g., Smith v. Washington County Kennel Club, Inc.*, 2014 WL 4627437 (N.D. Fla. 2014) (finding that five additional opt in members insufficient to certify a class); *Latortue v. Fast Payday Loans, Inc*., 2010 WL 557712 (M.D. Fla. 2010) (finding that adding five opt-in plaintiffs was not sufficient to certify a class); *Rappaport v. Embarq Mgmt. Co.*, 2007 WL 4482581 (M.D. Fla. Dec.18, 2007) (finding six opt-in affidavits insufficient to certify class); *Sanders v. Drainfield Doctor, Inc*., 2007 WL 1362723 (M.D. Fla. 2007) (finding class of twelve employees not large enough to justify class treatment).

Plaintiffs have provided no evidence that, if this court grants certification, additional plaintiffs (other than those who have already sent notice – Kimble and Harris) are likely to surface in any meaningful number.[12] At this point, having already had the opportunity to conduct discovery necessary to identify additional op-ins, certification appears to be designed as a fishing expedition for additional plaintiffs.  Certification is not the appropriate means to discover other plaintiffs to join the lawsuit. *Smith,* 2014 WL 4627437 at *2 (citing *Sanders*, 2007 WL 1362723 at *3 (and in turn citing *Mackenzie v. Kindred Hosps. East, L.L.C*., 276 F.Supp.2d 1211, 1220 (M.D. Fla. 2003)).   "It would not be in the interests of justice to utilize judicial resources to search for a class with so little evidence of its existence, and when the existing class is so small (at most seven individuals)."  *Smith,* 2014 WL 4627437 at *2.

B. **The Individual Claims**

Plaintiffs have also asserted Individual Claims.  As Defendants correctly note, the Individual Claims are specific to Plaintiffs' various positions, circumstances, and work

---

[12] This lack of opt-in interest may be connected to the facts that the Board has previously corrected the challenged pay formula (Doc. # 41-1, pp. 4-7) and after that change, issued back pay checks to all those affected. (*Id.*).

responsibilities for the Board.  The court concludes that the allegations made by Plaintiffs and the evidence they have submitted with respect to these Individual Claims simply does not justify treating these claims collectively.  Plaintiffs have not met the requirements of showing that other employees who are similarly situated desire to opt in.

### 1. Plaintiffs Have Not Shown a Board Policy, Plan, Practice or Scheme that Relates to Plaintiffs' Individual Claims and Violates the FLSA

It is axiomatic that a plaintiff seeking to certify an FLSA class must show that the employer has policies or practices that violate the FLSA.  As noted above, Plaintiffs' FLSA claims in this case are identical to those they asserted in their 2010 Case.  In the 2010 Case, the parties took fourteen months to conduct extensive comprehensive discovery concerning these claims.  That discovery included seventeen depositions (including depositions of all Plaintiffs in this case and five Board Representatives),[13] Interrogatories and Requests for Production sent by Plaintiffs to the Board, similar requests from the Board to Plaintiffs, and production of substantial documents by both sides (including time records and personnel files of every Plaintiff).

The substantial discovery completed in the 2010 Case, and other discovery taken in this litigation, have permitted Plaintiffs an ample opportunity to discover the Board's policies related to their Individual Claims.  As already noted above, the rationale for application of the "more lenient" standard simply does not apply here. Rather, it is appropriate to apply a "more searching standard of review" to determine whether there are other employees who are "similarly situated"

---

[13] Plaintiffs took the deposition of the Board's Superintendent (Dr. Phil Hammonds), CFO (Ms. Sheila Jones), Deputy Superintendent (Dr. Yancy Morris), Director of Support Operations (Mr. Eddie Brown) and Central Office Building Coordinator (Mr. Lonnie Self).  Each of these depositions was made a part of the record in the 2010 Case.  The court takes judicial notice of the record in that action.  *See Horne v. Potter*, 392 Fed. Appx. 800 (11th Cir. 2010); *Universal Express Inc. v. U.S. S.E.C.*, 177 Fed. Appx. 52, 53 (2006) (*per curiam*); *Cash Inn of Dade, Inc. v. Metropolitan Dade County*, 938 F. 2d 1239 (11th Cir. 1991).

to whom notice should issue. *Thedford*, 2014 WL 5520954 at *2 (N.D. Ala. 2014) (citing *Davis v. Charoen Pokphand (USA) Inc.*, 303 F.Supp.2d 1272, 1276 (M.D. Ala. 2003)).[14]

Here, despite conducting extensive discovery, Plaintiffs have not pointed to any common evidence of a pervasive policy, plan, or practice by the Board that violates the FLSA and relates to each of the Plaintiffs themselves (much less others). Consequently, this situation is analogous to that which was presented to this court in *Saxton v. Title Max of Alabama, Inc.*, 431 F.Supp.2d 1185 (N.D. Ala. 2006. In *Saxton* the plaintiffs failed to offer statements or other evidence of any "single decision, policy, or plan" that allegedly resulted in the proposed opt-in class not receiving overtime wages in contravention of FLSA. *Id.* at 1188. This court denied the class certification motion and reasoned as follows:

> In the absence of any evidence tending to show that [the employer] routinely breached FLSA's overtime provisions, such deviations are then, by their very nature, highly case-specific and subject to a variety of variables, including whether [management] neglected to enforce the overtime policy and/or whether the [employee] failed to report his or her overtime hours. The individualized analysis of overtime compensation runs directly counter to "the economy of scale envisioned by" collective treatment of substantially similar employees under § 216(b) of the FLSA. *See Horne v. United Servs. Auto. Ass'n*, 279 F.Supp.2d 1231, 1237 (M.D. Ala. 2003) (discussing § 216(b)'s "competing considerations of the economy of scale" and avoiding "'stirring up' of litigation through unwarranted solicitation") (citations omitted). Accordingly, Plaintiffs' efforts to obtain conditional certification are alternatively rejected because they have failed to satisfy the similarly situated requirement regarding their compensation.

*Id.* at 1189. The court's analysis in *Saxton* applies equally here.

---

[14] In *Davis*, the court explained the significance of discovery on the collective action process as follows:

This case is in a slightly different posture than that envisioned in *Hipp* as the first stage, or "notice stage," 252 F.3d at 1218, and thus a more searching standard of review is appropriate. The rationale for the "fairly lenient standard" is that at the early stages of litigation, plaintiffs have not had time to conduct discovery and marshal their best evidence. *See id.* This rationale disappears, however, once plaintiffs have had an opportunity to conduct discovery with respect to defendant's policies and procedures. *White v. Osmose, Inc.*, 204 F.Supp.2d 1309, 1313 n.2 (M.D. Ala. 2002)(Albritton, C.J.); *see also Brooks v. BellSouth Telecommunications, Inc.*, 164 F.R.D. 561, 566 (N.D. Ala. 1995)(Blackburn, J.)(analyzing motion for conditional class certification in light of extensive discovery by plaintiff.)

*Id.* at 1276.

2.      **Not Only Have Plaintiffs Failed to Show that They are Similarly Situated for Purposes of Maintaining a Collective Action on Their Individual Claims, They Have Not Shown They are Similarly Situated to One Another**

Plaintiffs seek to certify a conditional class of all "non[-]exempt and non-certified positions, including but not limited to custodians, paraprofessional, secretaries, bookkeepers, maintenance, Ketona facility workers, and drivers" which essentially consists of all non-teachers or administrative level employees. (*See* Doc. # 1, ¶ 3). The class they seek to certify is exceptionally broad. The Board employs over 1,500 non-exempt employees at over sixty different job locations with varying work hours, work days, schedules, supervisors, and job duties, responsibilities and classifications. Here, Plaintiffs have not shown that they themselves are similarly situated to each other, much less that there are other employees working (or who previously worked) for the Board who are similarly situated. The court addresses both comparisons.

a.      **Plaintiffs Themselves are Not Similarly Situated to Each Other**

Substantial differences exist between the types of positions Plaintiffs held. In addition, Plaintiffs work at different locations, and during different work periods. Below is a chart submitted by the Board which demonstrates the differences:

| *Name* | *Position Held* | *Work Location* | *Current Status* |
|---|---|---|---|
| Daryl Walker | Assistant Building Coordinator | Central Office | Active |
| Kimberly Brumbeloe | Secretary | Central Office (Curriculum and Instruction Support Services) | Resigned 12/12/12 |
| Ronnie Newsome | Certified Technician - Truck and Equipment Operator | Support Operations | Retired 3/1/12 |

16

| Darlene Holder | Staff Accountant | Central Office (New Construction) | Active |
| Clarence Powell | Certified Technician - Electrician/Custodian | Central Office | Retired 3/1/14 |
| Odell Sumerlin | Utility Worker - Truck and Equipment Operator | Support Operations | Retired 12/6/11 |
| Sylvia Miller | Office Assistant I | Central Office | Active |
| Jimmy Williams | Specialist - Storage and Distribution | Support Operations | Retired 1/5/12 |
| Eugene Jarmon, Jr. | Custodian | Central Office | Retired 9/1/10 |
| Ronald Chambers | Head Custodian | Minor High School | Retired 3/1/14 |

(Doc. # 41 at 13).

The goal of a collective action is to promote judicial efficiency. Here, there is little commonality in the positions, locations of work, and periods of work performed by Plaintiffs themselves, as well as between Plaintiffs and those they seek to send notice to. Therefore, no efficiencies would be created by granting the Motion and sending notice to other employees who held different positions, worked a variety of hours, possessed disparate job duties, experienced different employment circumstances, and worked in dissimilar locations under a number of supervisors. It follows, therefore, that judicial economy will not be promoted if the court permits Plaintiffs to transmit notices and attempt to secure consents from persons whose claims are inherently dissimilar to those advanced by Plaintiffs in this action.

> **b.     No Commonality Exists between the Nature of Plaintiffs' Individual Overtime Claims and Those of Other Potential Plaintiffs**

In assessing whether employees are similarly situated for the purposes of collective action treatment, a district court must also "analyze the *nature* of each employee's job duties, and the degree to which evidence regarding the [named] plaintiff's job duties can be applied to

17

all other employees." *Pickering v. Lorillard Tobacco Co.*, 2012 WL 314691 at *12 (M.D. Ala. 2012) (emphasis in original); *see also Prince*, 2015 WL 1040713 at *9 (N.D. Ala. 2015). This burden cannot be met by simply showing commonality between job duties and pay provisions of Plaintiffs' and putative class members. Rather, putative representatives must show commonality between the *basis* of their claims and the claims of the putative class. *See Marsh v. Butler Cnt. Sch. Sys.*, 242 F.Supp.2d 1086, 1053 (M.D. Ala. 2003). Here, Plaintiffs have not come forward with any information that satisfies this burden. Indeed, a comparison of the specific allegations made by Plaintiffs concerning their Individual Claims and the claims of others in the putative class establishes that there is no commonality between those respective claims.

The evidence submitted with the Motion in the Declaration of Jimmy Williams and Ronald Chambers falls short of the threshold burdens necessary to support a collective action. Jimmy Williams worked as a Specialist in Support Operations at the Ketona facility. He has alleged in his Complaint that he "was paid a monthly compensation based on a 40 hour work week," and that "[t]he Board . . . did not pay [him] for all hours worked over forty at a rate of time and a half." (Doc. #1, ¶ 30). Williams also submitted a Declaration (Exhibit B to Motion) in which he stated the following in relevant part:

> 4.  My schedule shift was 7:00 a.m. to 3:30 p.m.  I was the second employee to arrive in the mornings at 6:30 a.m. wherein to beg[i]n my daily duties. Eddie Brown was the first employee to arrive at the 'Ketona' facility.
>
> 5.  I worked through my one hour duty free period.
>
> 9.  My normal workweek while employed by the Board consisted of between 47 and 50 hours per week.  I did work such as paperwork, reports and vehicle preparation including loading and unloading the trucks.
>
> 10. I arrive thirty minutes early and started my duties.

18

(Doc. # 40-2, ¶¶ 4, 5, 9, 10). Putting aside the question of whether these allegations are consistent with his deposition testimony, what is clear from the Rule 56 record is that Williams (1) occupied a unique position at a unique facility in a Board department that no longer exists,[15] and (2) worked with employees who are either already named Plaintiffs in this suit (Odell Sumerlin and Ronnie Newsome)[16] or who are no longer employed by the Board.  Because the procedures, job conditions, and work environment at the Department where Williams worked are no longer in place, there are simply no employees who are "similarly situated" to him.  (*See* Doc. # 41-2 at 2).

When the 2010 Case was filed, the original plaintiffs in that action included twenty employees from the Transportation and Maintenance Departments at Ketona.  But all of those employees have since voluntarily dismissed their claims. That left only the employees in Storage and Distribution in the suit. (*See* 2010 Case, Docs. # 27, 35).  Because of the unique position Williams held (*i.e.*, the special nature of the Ketona facility, his unique job functions, the shuttering of his former work group, and the time that has passed since he retired), and the unique basis of his claims (*i.e.*, the very job-specific allegations he has made), Plaintiffs simply cannot establish that there are other employees who are similarly situated to him.

Ronald Chambers worked as the Head Custodian at Minor High School.  He is the only local school-based employee in this suit.  He alleged in the Complaint that he "was paid a monthly compensation based on a 40 hour work week," and that "[t]he Board . . . did not pay

---

[15] Williams was employed in the Storage and Distribution division of Support Operations at the Ketona facility.  Support Operations used to consist of two components:  Storage and Distribution (where Williams, Newsome, and Sumerlin worked) and Maintenance.  However, operational changes rendered Storage and Distribution unnecessary.  The duties performed by that group were effectively phased out as employees retired or resigned and the duties formerly performed by Storage and Distribution employees are now performed by employees in the Maintenance Department.

[16] In his deposition, Williams testified that he supervised Newsome and Sumerlin, among others.  (Case No. 2:10-cv-2713-JEO, Doc. # 57-6).

[him] for all hours worked over forty at a rate of time and a half." (Complaint, ¶ 32).   Chambers submitted a Declaration in which he claims the following in relevant part:

> 3.  I worked through my duty free periods or often worked later than my scheduled work time several days of each work week.  In fact, I did not have a scheduled or thirty minute duty free period.
>
> 6.  My normal workweek while employed by the Board consists of between 45 and 50 hours per week.
>
> 7.  My normal shift as Head Custodian was 3 p.m. to 11 p.m.  On several occasions, I started work by going to get supplies one and one half to two hours before my shift started.
>
> 8.  I was required to answer the school alarm after my shift.  I answered the alarm calls at least once per week, which took approximately two and a half hours.

(Doc. # 40-3, ¶¶ 3, 6-8). Again, putting aside any issue as to whether Chambers's Declaration is consistent with his deposition testimony,[17] the court notes that Chambers: (1) is now retired and has no personal knowledge of the processes and procedures which now are in place at the Board, at his former work location, or at other Board schools or locations; (2) was the only Head Custodian at Minor High School, and in that position his job duties included a unique range of responsibilities, some of which other custodians do not share (including supervision of other custodians); and (3) worked an unsupervised shift (from 3:00 p.m. to 11:00 p.m. during which, at least for the most part, administration was not present).  Because his position was unique and the nature of his duties was unlike those of other Board employees (including other persons holding custodian jobs), the evidence submitted does not establish the requisite nexus between his job and the positions of other "similarly situated" employees.

These are but two examples of why Plaintiffs' claims are not appropriate for collective treatment. They have not shown, even after conducting substantial discovery, that similarly

---

[17] Chambers testified that his shift was scheduled to be 3-11:30, but he sometimes did not take his 30 minute free period so he could leave early at 11:00.  (Case No. 2:10-cv-2713-JEO, Doc. # 57-17 at 11-12).

situated employees (1) have been affected by similar pay practices, (2) have not received overtime compensation, and (3) desire to pursue their wage claims in this action. Indeed, considering the diversity of Plaintiffs' positions, the disparate nature of their respective duties, and their allegations and submissions, at best, they have only alleged general, sporadic violations of the FLSA in their Individual Claims. That evidence does not reasonably connect their claims to those of other "similarly situated" employees and, as recognized in *Thedford*, is legally insufficiently to justify collective treatment:

> [T]he mere fact that violations occurred cannot be enough to establish similarity, as that would not ultimately be sufficient to establish a pattern and practice without a showing that the violations were more than sporadic occurrences." [*Marsh v. Butler Cnty. Sch. Sys.*, 242 F.Supp.2d 1086, 1094 (M.D. Ala. 2003] Plaintiff must demonstrate a "pattern" of FLSA violations that "stem from [defendant's] formal or informal policy." *Id.*; *see also Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1264 (11th Cir. 2008).

*Thedford*, 2014 WL 5520954 at *12.

Actually, the situation that now confronts this court is substantially similar to that presented in *Marsh v. Butler Cnty. Sch. Sys.*, 242 F.Supp.2d 1086 (M.D. Ala. 2003). In *Marsh*, the plaintiffs alleged that they were victims of a common plan or policy under which the defendant failed to pay overtime wages for all time worked in excess of forty hours (40) per week. The *Marsh* plaintiffs sought conditional class certification pointing to employees who worked for that school board in various positions: bus drivers, custodians, assistant teachers, janitors, cafeteria workers, maintenance workers, bus barn employees, secretaries, cafeteria managers, mechanics, maids, and security guards. However, just as here, the *Marsh* plaintiffs came forward with nothing to suggest that there was a particular employment practice which led to the loss of properly paid time. *Id.* at 1087. Faced only with evidence of sporadic FLSA

violations, the court denied the plaintiffs' motion for conditional class certification and reasoned as follows:

> In this case, there is apparently no dispute that the employees at issue are in various job classifications and employed at different schools within the Defendant system. While this is not fatal to a finding that the plaintiffs are similarly situated, *Harper v. Lovett's Buffet,* 185 F.R.D. 358 (M.D. Ala.1999), the mere fact that violations occurred cannot be enough to establish similarity, as that would not ultimately be sufficient to establish a pattern and practice without a showing that the violations were more than sporadic occurrences. To conclude otherwise, that is, to conclude that it is enough to demonstrate that employees are similarly situated simply to say that they claim violations of the law by the same employer, is to conclude that any time an employer had two or more employees who allegedly were not being paid the overtime they claimed they were due, the employees would be similarly situated and be allowed to proceed with a collective action.

*Id.* at 1093. The *Marsh* court's analysis applies with full force here.

### 3.      Plaintiffs Have Not Satisfied the Opt-In Interest-In-Litigation Requirement

In its discussion of the Common Claim above, the court has explained why Plaintiffs have not satisfied the opt-in interest-in-litigation requirement.  (*See* section IV., A, 1, *supra*). That same analysis applies to Plaintiff's Individual Claims.  Plaintiffs have not shown the existence of other similarly situated employees who desire to opt-in.

### 4.      Other Alleged Grounds for Motion are Insufficient

In their Motion, Plaintiffs assert that several other factors support their Motion. However, each of these "other factors" constitutes an insufficient basis to grant the Motion.

For instance, Plaintiffs allege that they are:

> all victims of a common plan, policy or practice of the Board which violated the provisions of the FLSA. That is, the Defendant knowingly and purposefully failed to properly calculate and pay overtime wages for all time worked in excess of forty (40) hours [per week] as specifically required in the FLSA. Plaintiffs contend that "Alabama school boards, generally, and Jefferson County Board of Education, specifically have been aware of the overtime issues since similar lawsuits were filed before 2003.

(Doc. # 40, ¶ 4).[18] An allegation that an employer knew of general overtime issues from other lawsuits is insufficient to support a motion for class certification, particularly after a group of plaintiffs have had years to conduct FLSA discovery and discover common practices and/or issues.   In *Marsh*, the plaintiffs made similar allegations that a defendant had previous knowledge of "problems with FLSA compliance standards." *Marsh*, 242 F.Supp.2d at 1088.  In that case, this prior knowledge was available based upon a show that had aired on public television.  *Id*.  The court in *Marsh* questioned whether this information was relevant, and further concluded that "if [it is at] all probative, [it is] only slightly probative of whether persons within the Defendant's school system exist who have been denied overtime in violation of the FLSA." *Id*.  Here, as in *Marsh*, even if these allegations about "other overtime issues" are probative, they certainly do not satisfy Plaintiffs' burden to demonstrate that there are other employees who desire to "opt-in" and who are "similarly situated" to Plaintiffs.

Finally, Plaintiffs contend that the Declarations of Williams and Chambers and the Consents of Kimble and Harris provide further evidence that there are others who are similarly situated to the named plaintiffs. (Motion, ¶ 5).  Williams made the following statements in his Declaration with respect to other, unnamed co-employees:

> 14.   During my employment with the Board, I knew of and worked with other specialist in support operations and staff who routinely worked in excess of forty (40) hours despite the fact that no overtime compensation was received for those hours over forty (40).
>
> 15.   Based upon my knowledge, observation, experience and dealings with the Board, I believe that there are other staff previously and currently employed that are similarly situated to me, in that we did not receive overtime pay at time and one half.

(Doc. # 40-2, ¶¶ 14-15).   Likewise, Chambers stated the following in his Declaration:

---

[18] Again, the Complaint in this case is entirely devoid of any allegations that the FLSA violations were willful (Doc. # 1), as were the Complaint and Amended Complaint in the 2010 Case.  (Case No. 2:10-cv-2713-JEO, Docs. # 1, 5).

> 11.  Based upon my knowledge, observation, experience and dealings with the Board, I believe that there are other staff previously and currently employed that are similarly situated to me, in that we did not receive overtime pay at time and one half.
>
> 13.  During my employment with the Board, I knew of and worked with other custodians and staff who routinely worked in excess of forty (40) hours despite the fact that no overtime compensation was received for those hours over forty (40).

(Doc. # 40-3, ¶¶ 11, 13).  After careful consideration, the court concludes these statements are insufficiently particular to meet Plaintiffs' burden.

The statements made by both declarants indicating that they "*believe* that there are other staff previously and currently employed who are similarly situated to [them]" are insufficient to demonstrate the actual existence of such similarly situated employees.  *Pickering v. Lorillard Tobacco Co.*, 2012 WL 314691 at *11 (M.D. Ala. 2012) (finding that an affiant's statement in conditional class certification motion that it was his "belief that other sales representatives in his division also were "spending a lot of time at night on e-mails" carries no evidentiary weight.); *see Boyd v. Alutiiq Global Solutions, LLC*, 2011 WL 3511085 at *6 (N.D. Ill. 2011) ("[D]eclarations filed in support of a motion for conditional certification must be based on personal knowledge.").  Accordingly, the "beliefs" of Williams and Chambers that others are similarly situated carries no weight here.[19]

---

[19] Williams and Chambers also state in their Declarations that they "knew of and worked with other . . . staff who routinely worked in excess of forty (40) hours despite the fact that no overtime compensation was received for those hours."  (Docs. # 40-2, 40-3).  But such vague and general statements are also insufficient.  Neither of the Declarants identify the other employees they know of who suffered any overtime violation, the number and nature of those violations, how they learned about the purported violations, or the time frames in which any such overtime violation involving another may have occurred.   There is no indication in the record that either individual had the opportunity to acquire personal knowledge of these matters.  Nor is there any indication that either individual was responsible for time sheet review, approved overtime or any payroll practices, or knew how many hours other employees actually worked (much less whether the subject employees were paid overtime).  Finally, as Williams has been retired for over three years, his knowledge of any such persons is dated.

## V.      Conclusion

For all of the foregoing reasons, Plaintiffs' Renewed Motion for Conditional Class Certification is due to be denied.  A separate order will be entered.

**DONE** and **ORDERED** this March 22, 2016.

**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE